# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| HAKKASAN LV, LLC, a Nevada limited liability company, HAKKASAN LIMITED, a foreign private limited company, | ) ) ) | Case No.: 2:14–cv–01717–GMN–NJK |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) ) | |
| MARK DANIEL ADAMCZYK, an individual; iDRIVE ORLANDO, LLC, a Florida limited liability company; JAMES PATRICK ADAMCZYK, an individual; MYDOMAINHOLDINGS, LLC, a foreign entity, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Pending before the Court is a Motion for Summary Judgment (ECF No. 39) filed by Plaintiffs Hakkasan LV, LLC and Hakkasan Limited ("Plaintiffs"). Defendant Mark Daniel Adamczyk ("Defendant")[1] filed a Response (ECF No. 42), and Plaintiffs filed a Reply (ECF No. 47). Additionally, Defendant filed a Motion to Vacate Default Judgment (ECF No. 25), and Plaintiffs filed a Response (ECF No. 26). Finally, Plaintiffs filed a Motion to Strike Defendant's Amended Answer and Counterclaims (ECF No. 41), which Defendant has not opposed.

## I.   BACKGROUND

Plaintiff Hakkasan Limited owns federal trademark registrations for the HAKKASAN

---

[1] In several of his filings, Defendant Mark Daniel Adamczyk has made requests for or moved on behalf of Defendants iDrive Orlando, LLC and James Patrick Adamczyk as well as himself (collectively "Defendants"). *See, e.g.*, (Motion to Vacate, ECF No. 25). However, because Defendant is proceeding *pro se* and is not a licensed attorney, he may not appear or make filings on behalf of the other Defendants. *See Wheat v. United States*, 486 U.S. 153, 159 (1988). Accordingly, the Court will only consider these filings on Defendant's behalf.

word mark for use in connection with restaurant, bar, and nightclub services and has made Hakkasan LV a licensee of the HAKKASAN mark. (McCabe Decl. ¶¶ 7–8, Ex. 1 to MSJ, ECF No. 39).  Hakkasan Limited has used the HAKKASAN mark since 2001, and Hakkasan LV has used the HAKKASAN mark since it opened in 2012. (*Id.* ¶¶ 9–10).

Defendant has no affiliation with Plaintiffs but used the domain names, <hakkasan.net> and <hakkasanbottleservice.com>, along with the HAKKASAN mark and images of the Hakkasan Las Vegas nightclub to obtain leads to book tables at the nightclub and sent these leads to commissioned VIP hosts in exchange for $399 per month. (Email, Ex. F to Thompson Decl. at 108–09, ECF No. 39); (Whois Screenshots, Ex. 2 to MSJ at 47–50, ECF No. 39); (Screenshot, Ex. B to Thompson Decl. at 84, 86, ECF No. 39).  Furthermore, Plaintiffs own two copyrighted images of the Hakkasan Las Vegas nightclub that appear on their <hakkasanlv.com> website, (Thompson Decl. ¶ 6, Ex. 3 to MSJ, ECF No. 39); (Screenshot, Ex. C to Thompson Decl. at 89, 95, ECF No. 39), and Defendant used these copyrighted images on his <hakkasanbottleservice.com> website. (Screenshot, Ex. B to Thompson Decl. at 84, 86, ECF No. 39).

Defendant admits that he "built" the websites and is the only one who associated with, acted upon, and set up the websites. (Answer ¶ 3, ECF No. 18); (Mot. to Vacate at 2, ECF No. 25).  Defendant spent "time and money" to ensure the websites' "search engine optimization." (Email, Ex. F to Thompson Decl. at 108, ECF No. 39); (Resp. to MSJ at 4, ECF No. 42).

On or about October 3, 2014, Plaintiffs sent Defendant a demand letter "requesting that Defendants immediately cease use of the Infringing Domain Names." (Thompson Decl. ¶ 8, Ex. 3 to MSJ, ECF No. 39).  In response to this letter, Defendant offered to sell the domain names to Plaintiffs in emails dated October 3, 2014 and October 6, 2014. (Email, Ex. F to Thompson Decl. at 108–109, ECF No. 39).  Plaintiffs declined Defendant's offer and instead demanded the immediate transfer of the domain names in an email dated October 6, 2014. (*Id.* at 108).  On

or about October 23, 2014, less than three weeks after the email exchanges, the domain names' contact information was changed from Defendant and iDrive Orlando, LLC to Patrick Adamczyk and MyDomainHoldings, LLC, a company in which Defendant is a director and founder. (Whois Screenshot, Ex. 2 to MSJ, ECF No. 39); (Thompson Decl. ¶ 11, Ex. 3 to MSJ, ECF No. 39); (My Domain Holdings Screenshot, Ex. 3 to Am. Compl., ECF No. 13).

Plaintiffs filed their Complaint (ECF No. 1) on October 16, 2014, asserting claims for cybersquatting, trademark infringement under the Lanham Act, counterfeiting, unfair competition, copyright infringement, common law trademark infringement, deceptive trade practices, and intentional interference with prospective economic advantage.  Plaintiffs subsequently filed the instant Motion for Summary Judgment on all eight claims.  Neither party has timely submitted a jury demand.

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When

the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the

truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

### A.  Motion for Summary Judgment

Plaintiffs ask for summary judgment on each of their eight claims: (1) cybersquatting; (2) trademark infringement under the Lanham Act; (3) counterfeiting; (4) unfair competition; (5) copyright infringement; (6) common law trademark infringement; (7) deceptive trade practices; and (8) intentional interference with prospective economic advantage. (MSJ 8:2–9:11, ECF No. 39).  The Court will analyze each of these claims in turn followed by an analysis of the Motion to Vacate, Motion to Strike, and the remedies awarded to Plaintiffs.

#### 1.  Anti–Cybersquatting Consumer Protection Act

To hold a defendant liable under the Anti–Cybersquatting Consumer Protection Act ("ACPA"), a plaintiff must show: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1219 (9th Cir. 2012) (citing *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010)).

Here, Defendant admits he used domain names to obtain leads and sent those leads to commissioned VIP hosts, which satisfies the first element under the ACPA. (Email, Ex. F to Thompson Decl. at 108, ECF No. 39).  Furthermore, Hakkasan Limited owns the HAKKASAN word mark for use in connection with nightclub services, which generally means that Hakkasan Limited has the "exclusive right to use the mark on the goods and services specified in the registration." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993) (citing 15

U.S.C. § 1115(a)).  Defendant's domain names <hakkasan.net> and <hakkasanbottleservice.com> incorporate the HAKKASAN trademark in its entirety, and thereby use a mark that is "identical or confusingly similar" to the Plaintiffs' protected HAKKASAN mark, which satisfies the second element under the ACPA. *See Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) (finding the "requisite similarity" between PerfumeBay and eBay because PerfumeBay "incorporates the eBay trademark in its entirety"); *see also infra* Part II.A.2 (discussing in the context of trademark infringement under the Lanham Act how Defendant's domain names are legally identical or confusingly similar to Plaintiffs' HAKKASAN mark).

Finally, to determine whether Defendant acted in bad faith, the Court is guided by a statutorily defined nonexclusive list of nine factors under 15 U.S.C. § 1125(d)(1)(B)(i).  The factors most pertinent to this case are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name; …
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; [and]
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct ….

15 U.S.C. § 1125(d)(1)(B)(i).

Regarding factor I, Defendant did not have a trademark right in the HAKKASAN mark, because Hakkasan Limited federally registered it, which, as discussed above, grants it exclusive rights and prohibits Defendant from using the mark. *Official Airline Guides, Inc.*, 6 F.3d at 1390 (citing 15 U.S.C. § 1115(a)); *see* 15 U.S.C. § 1125(d)(1)(B)(i)(I).

Furthermore, Defendant demonstrated bad faith under factor V when he admitted that he initially spent "time and money" to create the websites and provides on-going "search engine optimization," to obtain leads for customers and receive leads which are sold to a Vegas VIP host who pays Defendant a monthly fee for these leads.  This demonstrates an intent to divert consumers from the mark owner's online location to Defendant's websites. *See* (Email, Ex. F to Thompson Decl. at 108, ECF No. 39).  This intentional use of the HAKKASAN trademark to divert traffic to Defendant's own domains could harm the goodwill represented by Plaintiffs' mark. (McCabe Decl. ¶ 28, Ex. 1 to MSJ, ECF No. 39).  Defendant's use of the HAKKASAN mark on his websites creates a likelihood of confusion as to the source, sponsorship, and affiliation of the sites. *See infra* Part III.A.2.

Finally, regarding factor VII, Defendant failed to maintain accurate contact information for the domain names when he changed the information to Patrick Adamczyk and MyDomainHoldings, LLC soon after Plaintiffs contacted Defendant about his infringing domains.[2] (Thompson Decl. ¶ 11, Ex. 3 to MSJ, ECF No. 39); *see* 15 U.S.C. § 1125(d)(1)(B)(i)(VII).  The Court need not analyze the other factors as these three are most important grounds for a finding of bad faith. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) (internal citations and quotations omitted).  Thus, this Court finds that

/ / /

/ / /

/ / /

/ / /

---

[2] Defendant claims in his Motion to Vacate that the contact information "somehow" updated so the change was simply "excusable neglect." (Mot. to Vacate at 2, ECF No. 25).  However, in the same paragraph he also admits that he could update the contact information to show anyone's name and is the only one who was associated with, acted upon, and set up the domains. (*Id.*).  Thus, because Defendant continuously exercised control over the domains' contact information, his vague assertion that the contact information was "somehow" updated does not demonstrate that the change was "excusable neglect" or that it should not weigh against him under factor VII.

Defendant acted with bad faith, which satisfies the third and final element of an ACPA claim.[3]  Accordingly, summary judgment in favor of the Plaintiffs is proper for this claim.

### 2.  Trademark Infringement under the Lanham Act

The core element of trademark infringement is whether the similarity of the marks is likely to confuse customers about the origin of the goods or services. *Official Airline Guides, Inc.*, 6 F.3d at 1391.  To determine whether there will be a likelihood of confusion, the Court considers several factors, including: the strength of the mark, the proximity of the goods, the similarity of the marks, the evidence of actual confusion, the marketing channels used, the type of goods and degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) (abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).  When considering trademark infringement claims based upon domain names on the internet, however, the three most important factors are "(1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (overruled on other grounds) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 n.16 (9th Cir. 1999)); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1148 (9th Cir. 2011) (While the "internet troika" identified in *GoTo.com, Inc.* will not be particularly helpful for all trademark infringement claims on the internet, it is "appropriate for domain name disputes.").

---

[3] The Court also notes that Defendant may not avail himself of the safe harbor provided under 15 U.S.C. § 1125(d)(1)(B)(ii) because he "could not have reasonably believed that he could lawfully use [the domain.]" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1220 (9th Cir. 2010) (footnote omitted).  He did not use the HAKKASAN mark for parody or comment. *See id.*  Moreover, he was not ignorant of Plaintiffs' superior right to the mark because it was registered, and he had received a letter from Plaintiffs informing him that he was infringing upon Plaintiffs' trademark rights yet continued to operate the infringing websites. *See id.*; (Thompson Decl. ¶ 8, Ex. 3 to MSJ, ECF No. 39); (McCabe Decl. ¶ 7, Ex. 1 to MSJ, ECF No. 39).

First, the similarity of the HAKKASAN mark and Defendant's domain names <hakkasan.net> and <hakkasanbottleservice.com> indicate a strong likelihood of consumer confusion.  In determining whether the marks are similar, the Court will not consider top level domains (e.g., ".com" or ".net").  *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004) (finding "Nissan.com" and the NISSAN trademark are "legally identical").  Therefore, <hakkasan.net> and the HAKKASAN mark are legally identical. Similarly, "merely descriptive words will not serve to distinguish names" where both businesses provide the same service. *See Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 n.1 (9th Cir. 1980) (noting that "American Security" and "American Security Bank" are similar because both businesses were banks and "Bank" was merely descriptive of the business).  Here, the HAKKASAN mark is used to promote Plaintiffs' "nightclub services," (McCabe Decl. ¶ 10, Ex. 1 to MSJ, ECF No. 39), while Defendant's domains link to a website operated by Defendant to book "bottle service" or "VIP table reservations, (Thompson Decl. ¶¶ 4–5, Ex. 3 to MSJ, ECF No. 39); (Resp. to MSJ at 3, ECF No. 42).  Both "bottle service" and "VIP table reservations" are types of nightclub services; therefore, <hakkasanbottleservice.net> is indistinguishable from the HAKKASAN mark, and the first factor weighs in favor of finding consumer confusion for both domains.

Regarding the second factor, the Court finds that the services offered by Plaintiffs' under the HAKKASAN mark and by Defendant through his domains are more than just related; in essence, the services offered are identical.  Not only do both the HAKKASAN mark and Defendant's domains relate to the provision of nightclub services, but Defendant's domains link to a website that purports to offer "bottle service" bookings or "VIP table reservations" at Plaintiffs' own nightclub. *See* (Screenshot, Ex. B to Thompson Decl. at 84, 86, ECF No. 39). Therefore, the relatedness of the goods and services also indicates a strong likelihood of consumer confusion.

Finally, Plaintiffs and Defendant simultaneously used the internet to market their services.  Defendant's first domain, <hakkasan.net>, was created on January 27, 2013, updated on February 12, 2013, and due to expire January 27, 2015. (Whois Website Screenshot, Ex. 2 to MSJ at 49, ECF No. 39).  Defendant's second domain, <hakkasanbottleservice.com>, was created March 7, 2013, updated May 3, 2014, and due to expire March 7, 2015. (*Id.* at 47).  This domain was also operational at least through November 7, 2014. (Screenshot, Ex. A to Thompson Decl. at 57, ECF No. 39) (a screenshot of the <hakkasanbottleservice.com> website dated November 7, 2014).  Plaintiff provided screenshots of <hakkasan.com> dated October 16, 2014, (Screenshot, Ex. 1 to MSJ at 42, ECF No. 39), and screenshots of <hakkasanlv.com> dated October 13, 2014. (Screenshot, Ex. C to Thomas Decl. at 89, ECF No. 39).  Thus, because these dates overlap, Plaintiffs and Defendant simultaneously marketed their services on the internet through their respective domains.[4]  Accordingly, all three factors indicate a strong likelihood of consumer confusion, and summary judgment in favor of Plaintiffs is proper for this claim.

### 3.  Counterfeiting

Defendants will be liable for using counterfeit trademarks if "without the consent of the registrant," defendants "use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services with which such use is likely to cause confusion, or to cause mistake . . . ." 15 U.S.C. § 1114(1)(a).  All of these elements are present here.

The HAKKASAN marks are registered under U.S. registration numbers 3,789,248 and 4,458,604. (McCabe Decl. ¶ 7, Ex. 1 to MSJ, ECF No. 39).  Defendant offered to sell bottle

---

[4] Defendant's only opposition to summary judgment on this claim was that there are no damages. (Resp. to MSJ at 3, ECF No. 42).  However, damages are not an element required to prove trademark infringement. *See* 15 U.S.C. § 1114.  Therefore, Defendant has failed to present any valid reason why summary judgment should not be granted.

service and VIP table reservations at the Las Vegas Hakkasan location using a reproduction of the HAKKASAN trademark on both websites. (Thompson Decl. ¶¶ 4–5, 7, Ex. 3 to MSJ, ECF No. 39).  Although Defendant contends he obtained consent from a third party—unrelated to Plaintiffs—to obtain "leads" and "sell general admission tickets," Defendant did not have Plaintiffs' consent to use the HAKKASAN mark. (Resp. to MSJ at 3, ECF No. 42); (Thompson Decl. ¶ 8, Ex. 3 to MSJ, ECF No. 39).  Finally, as discussed under the trademark infringement claim, Defendant's unauthorized use of the HAKKASAN mark is likely to cause confusion. *See supra* Part III.A.2.  Accordingly, summary judgment in favor of Plaintiffs is proper for this claim.

### 4.  Unfair Competition

To show unfair competition, a plaintiff must prove a defendant, "on or in connection with any goods or services, … use[d] in commerce any word, term, name, symbol, or device … which … is likely to cause confusion…." 15 U.S.C. § 1125(a).  Further, a plaintiff must "believe that he or she is likely to be damaged by such act." *Id.*

First, Defendant admits he used the Hakkasan name to obtain leads to sell bottle service and VIP table reservations. (Resp. to MSJ at 3, ECF No. 42).  Second, the "likelihood of confusion" test for unfair competition is identical to the one for trademark infringement. *New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979).  As previously discussed under the trademark infringement claim, Defendant's use of the HAKKASAN trademark and name is likely to cause confusion. *See supra* Part III.A.2.  Finally, the President of Hakkasan Group believed that Defendant's use of the Hakkasan name would damage the Plaintiffs' "reputation, goodwill and … business." (McCabe Decl. ¶¶ 2, 28, Ex. 1 to MSJ, ECF No. 39).  Therefore, all the elements for an unfair competition claim are present here.

In opposition to this claim, Defendant contends that Plaintiffs' commission hosts actually like for him to attract clients to the Las Vegas Hakkasan location, however, he has

failed to provide evidence that Plaintiffs have commissioned him to attract clients on their behalf. (Resp. to MSJ at 3–4, ECF No. 42).  Moreover, Plaintiffs provided evidence demonstrating that Defendant knew he did not have Plaintiffs' consent to use their mark, namely a demand letter sent by Plaintiffs to Defendant "requesting that Defendants immediately cease use of the Infringing Domain Names." (Thompson Decl. ¶ 8, Ex. 3 to MSJ, ECF No. 39) (indicating Plaintiffs sent a demand letter to Defendant on approximately October 3, 2014).  After receiving the demand letter, Defendant continued to operate the offending websites. (Screenshot, Ex. A to Thompson Decl. at 57, ECF No. 39) (showing a screenshot of the <hakkasanbottleservice.com> website dated November 7, 2014).  Accordingly, summary judgment in favor of Plaintiffs is proper for this claim.

### 5.  Copyright Infringement

Plaintiffs alleging direct copyright infringement must demonstrate that: (1) they own the copyright, and (2) the defendant violated plaintiffs' exclusive rights under the Copyright Act. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing *A & M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001) (Napster II)) (footnote omitted).  Under the Copyright Act, copyright owners have the exclusive right to reproduce the copyrighted work and may rent, lease, or lend their copyrighted works. 17 U.S.C. § 106.

In the instant case, Plaintiffs own two copyrighted images that appear on their <hakkasanlv.com> website. (Thompson Decl. ¶ 6, Ex. 3 to MSJ, ECF No. 39); (Screenshot, Ex. C to Thompson Decl. at 89, 95, ECF No. 39).  Defendant used these copyrighted images on his own <hakkasanbottleservice.com> website, violating Plaintiffs' exclusive right to reproduce the copyrighted work. (Screenshot, Ex. B to Thompson Decl. at 84, 86, ECF No. 39).  Although Plaintiffs may rent, lend, or lease their copyrighted works and Defendant claims others use images of the Hakkasan nightclub, Defendant has failed to provide any evidence or even allege that Plaintiffs granted him the right to use Plaintiffs' copyrighted images. (Resp. to MSJ at 3,

ECF No. 42).  Accordingly, summary judgment in favor of Plaintiffs is proper for this claim.

### 6.  Common Law Trademark Infringement

To prove a common law trademark infringement claim under Nevada law, plaintiffs must prove: (1) the plaintiffs have a protectable right and (2) the defendant infringed on the protectable right.  *A.L.M.N., Inc. v. Rosoff*, 104 Nev. 274, 277 (1988).  This district has previously held that federal registration and the continuous and exclusive use of the trademarks grants plaintiffs a protectable right.  *Hakkasan LV, LLC v. VIP, UNLTD, LLC*, 63 F. Supp. 3d 1259, 1267 (D. Nev. 2014).  Plaintiffs may show that defendants infringed on a protectable right by showing that a "similar or identical tradename is likely to confuse . . . reasonable customers."  *A.L.M.N., Inc.*, 104 Nev. at 281.  In Nevada, the likelihood of confusion is an issue of fact, and the Court considers factors similar to those considered by the Ninth Circuit under the Lanham Act including: the degree of similarity between the tradenames, the similarity of services offered, and the marketing channels used by the junior and senior users. *Id.* at 282.

As previously established, Plaintiffs have registered the HAKKASAN trademark. (McCabe Decl., Ex. 1 at ¶ 7, ECF No. 39).  Hakkasan Limited has used the HAKKASAN mark continuously since 2001, and Hakkasan LV has used the HAKKASAN mark since it opened in 2012. (McCabe Decl. ¶¶ 9–10, Ex. 1 to MSJ, ECF No. 39).  Further, Plaintiffs have used the mark exclusively by "continuously taking steps to ensure that any infringing uses of their marks cease immediately." (McCabe Decl. ¶ 17, Ex. 1 to MSJ, ECF No. 39).  Thus, Plaintiffs have a protectable right in the HAKKASAN mark.  Likewise, as previously discussed under the Lanham Act trademark infringement claim, Plaintiffs have been able to prove that Defendant's actions are likely to confuse potential customers. *See supra* Part III.A.2.  Therefore, the second part of the test is also satisfied.

Defendant counters that the disclaimer on the <hakkasanbottleservice.com> website is sufficient to alleviate any likelihood of confusion; however, his disclaimer is inadequate. (Resp.

to MSJ at 4, ECF No. 42).  "Due to the nature of Internet use, [a] defendant's appropriation of [a] plaintiff's mark as a domain name and home page address cannot adequately be remedied by a disclaimer." *Key3Media Events, Inc. v. Convention Connection, Inc.*, No. CV–S–001311–KJD–RJJ, 2002 WL 385546, at *3 (D. Nev. Jan. 25, 2002) (analyzing a trademark infringement claim under the Lanham Act) (quoting *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 303 (D. N.J. 1998)).  Moreover, even if a disclaimer could be sufficient to remedy confusion, the disclaimer in this case—which consists of the phrase "For Promo Use Only" in tiny print in the bottom left corner of the page—would be insufficient to avoid causing consumer confusion. Accordingly, Defendant's assertion is insufficient to create an issue of material fact, and summary judgment in favor of Plaintiffs is appropriate for this claim.[5]

### 7.  Deceptive Trade Practices

Pursuant to Nevada Revised Statutes § 41.600, an "action may be brought by any person who is a victim of consumer fraud" which includes a "deceptive trade practice as defined in NRS § 598.0915."  Under NRS § 598.0915, "[a] person engages in a deceptive trade practice if, in the course of his or her business or occupation, he or she: … [k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease… [or k]nowingly makes any other false representation in a transaction." Defendant admits that he has no affiliation with Plaintiffs, (Resp. to MSJ at 5, ECF No. 42), yet he falsely used the Hakkasan name and images from the Las Vegas Hakkasan nightclub to obtain leads to sell in a transaction—suggesting that Plaintiffs sponsored or approved of Defendant's website.  (Answer ¶¶ 3–4, ECF No. 18); (Whois Screenshots, Ex. 2 to MSJ at 47–50, ECF No. 39); (Screenshot, Ex. B to Thompson Decl. at 84, 86, ECF No. 39); *see*

---

[5]  Defendant contends in opposition to Plaintiffs' common law trademark infringement claim that Plaintiffs were not damaged by his actions. (Resp. to MSJ at 4, ECF No. 42).  However, as with trademark infringement under the Lanham Act, damages are not an element of this claim. *See supra* Footnote 4.  Therefore, Defendant's argument fails to provide a valid basis against a finding for summary judgment.

*Mayweather v. Wine Bistro*, No. 2:13–CV–210–JAD–VCF, 2014 WL 6882300, at *7 (D. Nev. Dec. 4, 2014) (finding a violation of NRS § 598.0915 when a defendant falsely used plaintiff's name and image to sell tickets to a party).  Having clear evidence and no genuine issue of material fact, the Court finds that summary judgment in favor of Plaintiffs is proper for this claim.[6]

### 8.  Intentional Interference with Prospective Economic Advantage

"Liability for the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." *Wichinsky v. Mosa*, 109 Nev. 84, 87–88 (1993) (citing *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88 (1987)).  Because Plaintiffs fail on the last element, the Court will not consider the other four.

Plaintiffs' evidence shows that Plaintiffs believed Defendant's use of the HAKKASAN mark would cause "damage to Plaintiffs' reputation, loss of goodwill, and loss of control over its business reputation" but have not provided any evidence of actual damages. (McCabe Decl. ¶ 21, Ex. 1 to MSJ, ECF No. 39).  Plaintiffs simply assert that they have "no ability to quantify the amount of injury caused by Defendant," and appear to assume that an inability to quantify damages somehow relieves them of the burden to prove actual damages. (*Id.* ¶¶ 22–27).

Plaintiffs offer no evidence to show that Defendant's website was the reason that customers chose to buy goods and services from Defendant's website instead of directly with the Plaintiffs or that any of Defendant's customers would have bought from Plaintiffs but for

---

[6] Defendant again argues that Plaintiffs have not suffered any damages; however, damages are not required to find Defendant engaged in deceptive trade practices. (Resp. to MSJ at 5, ECF No. 42); *see* Nev. Rev. Stat. § 598.0915; *see also supra* Footnote 4.

Defendant's website.  In fact, in their Statement of Undisputed Facts, Plaintiffs state that Defendant sends "leads to commissioned VIP hosts" and a "VIP host has booked tables at the nightclub," indicating that there is at least one additional indirect method by which to purchase these services. (MSJ 6:25–28, 7:19–20, ECF No. 39).  This district has found that without any evidence of consumers' decision–making processes or evidence that Defendant's actions were a substantial factor in consumers' decisions, the last element, actual harm due to the defendant's conduct, will not be satisfied. *See Bally Technologies, Inc. v. Bus. Intelligence Sys. Solutions, Inc.*, No. 2:10–CV–00440–PMP, 2012 WL 3656498, at *5 (D. Nev. Aug. 23, 2012) *aff'd*, 540 F. App'x 997 (Fed. Cir. 2013) (finding that without a link to show the interfering party's action was a substantial factor to a third party's decision-making process, the injured party could not show actual harm and proximate cause).  Plaintiffs have failed to offer any evidence to show that they suffered actual harm because of Defendant's conduct.  Thus, summary judgment in favor of Plaintiffs would be improper and is denied for this claim.

### B.  Motion to Vacate

Defendant filed a Motion to Vacate Default Judgment on behalf of iDrive Orlando, LLC and James Patrick Adamczyk. (ECF No. 25).  However, the law is clear that a non-lawyer may only represent his own interests. *See* 28 U.S.C. § 1654.  A non-lawyer "has no authority to appear as an attorney for others than himself." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) (a father, a non-lawyer, could not represent his son in a federal civil rights action) (quoting *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)).  Furthermore, "[a] corporation may appear in federal court only through licensed counsel." *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993)).  Therefore, this Court will not consider Defendant's Motion to Vacate on behalf of James Patrick Adamczyk, another person, and iDrive Orlando, LLC, a corporation, because Defendant, a non-lawyer, has no authority to

represent them.  Accordingly, the Motion to Vacate is denied and stricken from the record.

### C.  Motion to Strike

Defendant filed an Amended Answer and Counterclaims (ECF No. 37) on February 23, 2015, and Plaintiffs filed a Motion to Strike Defendant's Amended Answer and Counterclaims (ECF No. 41) on March 13, 2015.  Defendant did not file a response to Plaintiffs' Motion to Strike.  Nevada Local Rule 7–2(d) states that the "failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."  Thus, Defendant consents to the granting of the motion.  Moreover, Defendant did not obtain opposing party's written consent or the Court's leave before filing an amended answer as required under Federal Rule of Civil Procedure 15, therefore, his Amended Answer and Counterclaims are precluded.  Accordingly, Plaintiff's Motion to Strike is granted and Defendant's Amended Answer and Counterclaims are stricken under Federal Rule of Civil Procedure 12(f).

### D.  Remedies

Plaintiffs seek a variety of remedies for their claims, including: (1) statutory damages for their cybersquatting claims, (2) statutory damages for their copyright claims, (3) an injunction against the use of both their copyrights and trademarks, (4) statutory damages for their counterfeiting and willful trademark infringement claims, (5) compensatory damages for corrective advertising, and (6) reasonable attorneys' fees.[7]

As an initial matter, the Court notes that Defendant's conduct in this case was particularly willful, and this willfulness informs the Court on the level of damages that will be appropriate.  "Willful infringement carries a connotation of deliberate intent to deceive.  Generally, deliberate, false, misleading, or fraudulent . . .  conduct . . . meets this standard."

---

[7] Plaintiffs only requested these six types of remedies in their Motion for Summary Judgment. (MSJ 25–29, ECF No. 39).  Accordingly, the Court will not address any other remedies that may be available to Plaintiffs under their various claims as requested in the Complaint. (Compl. 12-13, ECF No. 1).

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (internal citation and quotation marks omitted).  Defendant admits that he "built" the websites, which included incorporating the HAKKASAN mark and copyrighted pictures. (Answer ¶ 3, ECF No. 18).  Defendant further admits he operated the websites to obtain leads, and his websites were similar to other websites that are "promoting Hakkasan on social media" demonstrating that he acted deliberately. (Email, Ex. F to Thompson Decl. at 108–09, ECF No. 39).  Moreover, Defendant continued his infringing activity after he was informed of its infringing nature, (Thompson Decl. ¶¶ 8, 14, Ex. 3 to MSJ, ECF No. 39), and "[u]se of an infringing mark, in the face of warnings about potential infringement, is strong evidence of willful infringement." *Fifty-Six Hope Rd. Music*, 778 F.3d at 1074 (*quoting E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 472, 475 (N.D. Cal. 1992)).  Accordingly, there is strong evidence establishing Defendant's willful conduct in this case.

### 1.  Statutory Damages for Cybersquatting

Regarding their cybersquatting claims, Plaintiffs elected to seek statutory damages pursuant to 15 U.S.C. § 1117(d) instead of actual damages and profits.  In determining appropriate statutory damages for cybersquatting, courts generally consider a number of factors including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information[,] . . . and other behavior by the defendant evidencing an attitude of contempt towards the court or the proceedings. *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, No. 10-CV-00617-SC, 2015 WL 525906, at *9 (N.D. Cal. Feb. 6, 2015) (citing *Verizon Cal. Inc. v. Onlinenic, Inc.*, C 08–2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009)).  Here, because of Defendant's particularly willful conduct and use of false contact information, the Court finds that Plaintiffs are entitled to a statutory award of Fifty Thousand

/ / /

/ / /

Dollars ($50,000) per infringement for a total of One Hundred Thousand Dollars ($100,000).[8]

## 2. Statutory Damages for Copyright Infringement

Regarding their copyright claims, Plaintiffs elected to pursue statutory damages under the Copyright Act.  If statutory damages are elected, "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984). The maximum award for willful infringement is $150,000 per infringement. 17 USC § 504(c)(2) (2000); *see also BWP Media USA, Inc. v. P3R, LLC*, No. 2:13-CV-05315 SVW, 2014 WL 3191160, at *3 (C.D. Cal. July 3, 2014) (granting statutory damages per infringing photograph taken from plaintiff's client's website and used on defendant's website).  Due to Defendant's willful infringement of two copyrighted photographs, the Court finds that a statutory award of One Hundred Thousand Dollars ($100,000) per infringement for a total of Two Hundred Thousand Dollars ($200,000) is appropriate pursuant to 17 U.S.C. § 504(c)

## 3. Permanent Injunction or Transfer of Infringing Domains

Plaintiffs also ask the Court to permanently enjoin Defendant from using their copyrighted works and trademarks and to order a transfer of Defendant's infringing domains to Plaintiffs.  The same test applies to both copyright and trademark infringements: "a permanent injunction may be entered where the plaintiff shows: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

---

[8] Courts in similar cases have awarded damages in this range. *See, e.g.*, *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1085–87 (C.D. Cal. 2012) (awarding $50,000 where defendant had provided false contact information to the domain registrar but no other factors were present); *Verizon Cal. Inc.*, C 08–2832 JF (RS), 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) (awarding $50,000 per violation where all four factors were present); *Citigroup, Inc. v. Shui*, 611 F.Supp.2d 507, 513 (E.D. Va. 2009) (awarding $100,000 where defendant's use of the domain was "sufficiently willful, deliberate, and performed in bad faith").

not be disserved by a permanent injunction." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (internal citations omitted) (applying the factors for a permanent injunction to a copyright infringement action); *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (applying the factors for a permanent injunction to a trademark infringement action).  Furthermore, "actual irreparable harm must be demonstrated to obtain a permanent injunction . . . ." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) cert. denied, 135 S. Ct. 57, 190 L. Ed. 2d 31 (2014) (applying the requirement to a trademark infringement case).  As previously discussed, Plaintiffs admit they cannot prove any actual injury, though they contend an injury has and will continue to occur. (McCabe Decl. ¶¶ 21–27, Ex. 1 to MSJ, ECF No. 39).  However, the ACPA grants the Court authority to order an infringing domain name be transferred to the trademark's owner. 15 U.S.C. § 1125(d)(1)(C).  Therefore, the Court denies Plaintiffs' request for a permanent injunction prohibiting further acts of infringement but orders a permanent transfer of both <hakkasan.net> and <hakkasanbottleservice.com> to Plaintiffs.

### 4.  Statutory Damages for Counterfeiting and Willful Trademark Infringement

Plaintiffs ask for the maximum statutory award—Two Million Dollars ($2,000,000)— for Defendant's willful use of counterfeit HAKKASAN marks pursuant to 15 U.S.C. §1117(c)(2); however, this request appears excessive in view of awards for similar conduct in this district. *See, e.g.*, (Final Judgment, Dkt. # 65, *Hakkasan LV, LLC v. VIP, UNLTD, LLC*, 2:13-CV-01999-JCM-NJK (awarding $500,000 for substantially similar conduct under a willful counterfeit claim)).  Accordingly, the Court finds that an award of Five Hundred Thousand Dollars ($500,000) is just pursuant to 15 U.S.C. § 1117(c)(2).

### 5.  Compensatory Damages for Corrective Advertising

Plaintiffs have also asked for compensatory damages for corrective advertising.  Even though Plaintiffs cannot show actual damages, Plaintiffs may still recover nominal damages for

corrective advertising at the Court's discretion. *See, e.g.*, *Bellagio v. Denhammer*, No. CV-S-00-1475-RLH-PAL, 2001 WL 34036599, at *5 (D. Nev. July 10, 2001).  Accordingly, the Court awards Plaintiffs One Thousand Dollars ($1,000) in damages for corrective advertising.

### 6.  Attorneys' Fees

Finally, Plaintiffs ask that the Court award them reasonable attorneys' fees.  The Court may award reasonable attorneys' fees for "exceptional cases" at its discretion under 15 U.S.C. § 1117(a).  The Ninth Circuit has found that willful conduct will make a case "exceptional." *See Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982).  As previously noted, Defendant's conduct here was willful.  Accordingly, Plaintiffs are eligible for an award of attorneys' fees in addition to their other damages.

## IV.  <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 39) is **GRANTED in part** and **DENIED in part**.  Summary judgment is **GRANTED** for the following claims: (1) cybersquatting; (2) trademark infringement under the Lanham Act; (3) counterfeiting; (4) unfair competition; (5) copyright infringement; (6) common law trademark infringement; and (7) deceptive trade practices.  The Clerk of the Court shall enter judgment in favor of Plaintiffs in the amount of One Hundred Thousand Dollars ($100,000) for cybersquatting, Two Hundred Thousand Dollars ($200,000) for copyright infringement, Five Hundred Thousand Dollars ($500,000) for counterfeiting, and One Thousand Dollars ($1,000) for corrective advertising for a total of Eight Hundred and One Thousand Dollars ($801,000) as well as reasonable attorneys' fees.  Summary judgment on Plaintiffs' eighth claim for intentional interference with prospective economic advantage is **DENIED**.  This claim will move forward in the judicial process.

**IT IS FURTHER ORDERED** that the infringing domain names, <hakkasan.net> and <hakkasanbottleservice.com>, shall be permanently transferred to Plaintiffs.

**IT IS FURTHER ORDERED** that Defendant's Motion to Vacate Default Judgment (ECF No. 25) on behalf of iDrive Orlando, LLC and James Patrick Adamczyk is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendant's Amended Answer and Counterclaims (ECF No. 41) is **GRANTED**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 19th day of August, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge